United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 16, 2007**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 05-50934

UNITED STATES OF AMERICA,

Plaintiff-Appellee

VERSUS

MARIO GUILLERMO IBARRA,

Defendant-Appellant

Appeal from the United States District Court
For the Western District of Texas
(05-CR-15)

Before DAVIS, DENNIS and PRADO, Circuit Judges.

PER CURIAM*

In this direct criminal appeal, Defendant-Appellant Mario Guillermo Ibarra ("Ibarra") challenges his convictions under 18 U.S.C. § 911 and 8 U.S.C. § 1326 on the ground that he was denied the right to represent himself at trial. We AFFIRM.

---

*Pursuant to 5ᵀᴴ CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ CIR. R. 47.5.4.

I.

On December 6, 2004, Ibarra was arrested by United States Customs and Border Protection inspectors at a port of entry in El Paso, Texas. Ibarra was accused of violating 18 U.S.C. § 911 (falsely and willfully representing himself to be a U.S. citizen) and 8 U.S.C. § 1326 (attempting to reenter the United States after prior deportation). Richard Mattersdorf ("Mattersdorf") was appointed to represent Ibarra in the district court.

Three days after his appointment, Mattersdorf moved to withdraw as counsel for Ibarra on the ground of a conflict between the two men. As support for the motion, Mattersdorf explained that Ibarra did not believe that Mattersdorf was his lawyer and that Ibarra had specifically said he did not want Mattersdorf to represent him. The court denied the motion to withdraw.

On May 5, 2005, Mattersdorf filed a second motion for leave to withdraw and in support detailed a meeting he had with Ibarra in which Ibarra had torn up a psychiatric evaluation counsel had given him, had informed counsel that he did not request or want his services, and had hung up his telephone on his side of the attorney visiting booth and refused to pick it back up. Mattersdorf asked the court to grant the motion to withdraw during the following exchange in a May 5, 2005, hearing on the subject of Ibarra's competency:

> MATTERSDORF: Mr. Ibarra . . . does not desire my services. I believe he may prefer to represent himself .

. . .

THE COURT: Well, he's not going to represent himself.

IBARRA: Your Honor, can I say a word? . . . I just want to let you know that I didn't like the [psychiatric] evaluation. It was so negative and even though I have emotional problems . . . I am an honest person, trustworthy and responsible . . . .

THE COURT: I can understand what you're saying, but . . . you are not a citizen. You have no right to remain in this country.

IBARRA: Well, I am a U.S. citizen. I have two nationalities and that's all I'm going to say. I'm not willing to say anything more.

THE COURT: Okay. If I appoint you another attorney, are you going to cooperate with the attorney?

IBARRA: I will not coop—I am not going to cooperate with any attorneys because that's the truth and nothing but the truth, so—

THE COURT: Okay.

IBARRA: If the country wants to reject me, it's up to them, because I am an honest, responsible person and I have been serving the country as well; never caused any problems. That's all I'm going to say.

THE COURT: Okay. Okay. We'll set you for trial.

After the court addressed the psychiatric evaluation, which had determined Ibarra possessed the ability to understand the proceedings against him as well as sufficient ability to consult with his attorney and assist in his own defense, the following exchange took place:

MATTERSDORF: Would the Court entertain a motion to allow Mr. Ibarra to proceed pro se?

THE COURT: No. Don't give him any ideas.

MATTERSDORF: Well, he already has the idea, Your Honor. I wish I could take credit for giving him—

THE COURT: He's already convicted himself [in a letter to the court], quite frankly. Anything he says is going to be—is not going to make any difference. I may find as a matter of law he's not a citizen. Period . . . .

THE COURT: June the 20th. You will represent him. And don't give him any ideas about pro se. It's bad

enough having a fool for a client.

 IBARRA: Sir,-Your Honor can I say a word?. . . <u>I am 30 years old and I don't want nobody to represent me.</u> So I want you just to give your final decision or decisions because I don't want to waste my time.

 THE COURT: What do you mean you want a decision? Are you pleading guilty?

 IBARRA: I don't want him. <u>I don't need no attorneys</u>. I already tell you that-

(emphasis added). At this point, the court did not further address the issue of self-representation but instead the discussion turned to Ibarra's right to a jury trial. The court explained to Ibarra that he had a better chance in front of a jury than he would in a bench trial and after statements by Ibarra disputing the charges against him, the court set the case for a jury trial.

On June 14, 2005, a pretrial conference was held at Mattersdorf's request to inform his client in open court of the Government's plea bargain. At the conference, Ibarra restated his belief in his innocence:

 IBARRA: I didn't commit any misdemeanors or any offense, those things that [the AUSA] was talking about. I have no idea. I am an honest person and responsible person, and I feel bad about it and disappointed of the authorities and the way they have been treating me, and the way I have been, you know.
 <u>Plus that's why one of the reasons that I don't really agree to have an attorney</u> and not even to be in front of a judge and in front of the jury, or on trial, is because it's kind of, you know, it's like making fun of me . . . .

(emphasis added). Ibarra ultimately refused the plea bargain.

On June 20, 2005, the case proceeded to jury trial with Mattersdorf acting as counsel. At the conclusion of the trial, the

jury found Ibarra guilty on both counts and the trial judge sentenced him to a four year term of non-reporting probation.

On appeal, Ibarra, still represented by Mattersdorf, argues the district court denied him his Sixth Amendment right to self-representation when it failed to consider or grant him the opportunity to proceed pro se despite what Ibarra construes as four separate oral motions, including: (1) Mattersdorf's statements at the May 5, 2005, competency hearing that Ibarra "may prefer to represent himself" and his inquiry to the court at that same hearing as to whether "the Court [would] entertain a motion to allow Mr. Ibarra to proceed pro se;" (2) Ibarra's statement at the competency hearing that "I am 30 years old and I don't want nobody to represent me;" (3) Ibarra's statement at the competency hearing that "I don't need no attorneys;" and (4) Ibarra's statement at the June 14, 2005, pretrial conference that "I don't really agree to have an attorney."

## II.

Ibarra's constitutional challenge to the district court's rulings are reviewed de novo.[1]

## III.

In Faretta v. California, the Supreme Court held that a defendant has a Sixth Amendment right to represent himself if he knowingly and intelligently chooses to forego the assistance of

---

[1]United States v. Virgil, 444 F.3d 447, 452 (5th Cir. 2006).

counsel.[2] Unlike the Sixth Amendment right to counsel, which is in effect until waived, the right to self-representation is not effective until asserted.[3] To assert his right of self-representation, a defendant must "knowingly and intelligently" waive his right to counsel, and the request must be "clear and unequivocal."[4]

Where a fundamental constitutional right such as the right to counsel is concerned, courts indulge every reasonable presumption against waiver.[5] In the absence of a clear election to forego counsel, a court should not quickly infer that a defendant unskilled in the law has waived counsel and has opted to conduct his own defense.[6] This circuit strictly construes the "clear and unequivocal" requirement.[7]

In Burton v. Collins, we held that where surrounding dialogue gave rise to reasonable competing interpretations attributable to a defendant's inquiry into whether he could represent himself, such competing interpretations were "the best evidence that [the defendant] did not clearly and unequivocally assert his right to

---

[2] 422 U.S. 806, 819, 836 (1975).

[3] Brown v. Wainwright, 665 F.2d 607, 610 (5th Cir.1982).

[4] Faretta, 422 U.S. at 835; Brown, 665 F.2d at 610.

[5] Burtons v. Collins, 937 F.2d 131, 133 (5th Cir. 1991).

[6] Id. (internal citations and quotations omitted).

[7] Id.

representation."[8]  In <u>Burton</u>, the defendant asked for new counsel just prior to his request for self-representation.  The trial court denied both requests.  On appeal, we held that the request for new counsel made it unclear as to whether the subsequent statement regarding self-representation was merely an expression of dissatisfaction with current counsel or an assertion of the right to self-representation.  We stated that "[i]n absence of a clear indication by the defendant of his desire to waive his fundamental constitutional right to counsel, we are unwilling to infer from an ambiguous record that such a waiver existed."[9]

In this case, statements delivered contemporaneously with the purported self-representation requests similarly create a reasonable interpretation of the requests other than an interpretation that Ibarra sought to waive his fundamental constitutional right to counsel.  One reasonable interpretation is that Ibarra's statements were simply meant to express his dissatisfaction with his detention and the judicial process.  For instance, as detailed above, before statements regarding waiver of counsel at the May 5th competency hearing, Ibarra had stressed his innocence: "Well I am a U.S. citizen.  I have two nationalities and that's all I'm going to say.  I'm not willing to say anything more . . . I am not going to cooperate with any attorneys because that's

---

[8]<u>Id.</u> at 134.

[9]<u>Id.</u> (citations omitted).

the truth and nothing but the truth." Further, after the purported self representation requests, Ibarra said "so I want you just to give your final decision or decision because I don't want to waste my time." Similarly, Ibarra's statement at the June 14th pre-trial hearing that "I don't really agree to have an attorney" should be viewed in the context of the words which came immediately afterwards: "[I don't agree] not even to be in front of a judge and in front of the jury or on the trial, is because it's kind of, you know, it's like making fun of me . . . ."

These statements can reasonablely be interpreted as verbal protests meant to express Ibarra's disagreement with his detention and the whole notion of a trial on his guilt or innocence rather than an assertion of the right to self-representation. The reasonableness of this interpretation is bolstered by the lack of any affirmative request on the part of Ibarra to present his case directly to the jury. Instead, Ibarra's statements only concern the discharge of counsel. Because the statements are subject to a reasonable competing interpretation unrelated to the waiver of the right to counsel and the assertion of the right to self-representation, Ibarra has not established that he clearly and unequivocally asserted his right to self-representation.[10]

Finally, the statements of Mattersdorf, while they better articulate a request for self-representation on behalf of Ibarra,

---

[10]See id.

also fail to establish a clear and unequivocal request for self-representation. As demonstrated by the excerpts above, Ibarra failed to support counsel's two statements on the issue of self-representation and instead interrupted the discussion between the court and counsel on this matter twice; the first time to criticize the psychological evaluation and the second time to ask for an immediate resolution of his case. Under these circumstances, we will not infer a waiver of the right to counsel.[11]

## IV.

For the foregoing reasons, Ibarra's convictions are AFFIRMED.

---

[11]See id. (noting that courts indulge every reasonable presumption against waiver of the right to counsel; in absence of clear indication by the defendant of his desire to waive right to counsel, the court would not rely on an ambiguous record to draw such an inference).